T.C. Memo. 2009-127

UNITED STATES TAX COURT

HASSEL FAMILY CHIROPRACTIC, DC, PC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3768-08L.                    Filed June 3, 2009.

Vincent Hassel (an officer), for petitioner.

<u>Lisa Kathryn Hunter</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before the Court on respon-
dent's motion for summary judgment (respondent's motion).  We
shall grant respondent's motion.[1]

_____

[1]All section references are to the Internal Revenue Code in
effect at all relevant times.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

## Background

The record establishes and/or the parties do not dispute the following.

Petitioner's address shown in the petition in this case was in Iowa.

Petitioner filed Form 941, Employer's Quarterly Federal Tax Return, for each of the quarters ended March 31, June 30, September 30, and December 31, 2002, and March 31, June 30, September 30, and December 31, 2003. (We shall refer collectively to the respective Forms 941 that petitioner filed for the quarters ended March 31, June 30, September 30, and December 31, 2002, and March 31, June 30, September 30, and December 31, 2003, as petitioner's Forms 941.)

Petitioner filed Form 945, Annual Return of Withheld Federal Income Tax, for each of its taxable years 2002 and 2003. (We shall refer collectively to the respective Forms 945 that petitioner filed for its taxable years 2002 and 2003 as petitioner's Forms 945.)

Respondent conducted an examination of petitioner's Forms 941 and petitioner's Forms 945. On August 22, 2006, respondent sent petitioner a so-called 30-day letter (August 22, 2006 30-day letter) in which respondent notified petitioner that respondent was proposing adjustments to (1) the Federal taxes that petitioner showed in each of petitioner's Forms 941 (petitioner's

Form 941 taxes) and (2) the Federal tax that petitioner showed in each of petitioner's Forms 945 (petitioner's Form 945 tax). The August 22, 2006 30-day letter stated in pertinent part: "Please tell us whether you agree or disagree with the proposed changes by * * * [September 21, 2006]. This letter (known as a 30-day letter) notifies you of your rights to appeal the proposed changes within 30 days."

Respondent attached to the August 22, 2006 30-day letter Form 4668, Employment Tax Examination Changes Report (Form 4668). In that form, respondent proposed for the quarters indicated the following increases in petitioner's Form 941 taxes:

| Quarter Ended | Increase in Form 941 Taxes |
| --- | --- |
| 3/31/02 | $20,602.52 |
| 6/30/02 | 19,563.79 |
| 9/30/02 | 24,755.50 |
| 12/31/02 | 22,322.80 |
| 3/31/03 | 27,869.57 |
| 6/30/03 | 17,773.67 |
| 9/30/03 | 31,076.95 |
| 12/31/03 | 28,071.19 |

In Form 4668, respondent also proposed an increase in petitioner's Form 945 tax of (1) $1,120.50 for petitioner's taxable year 2002 and (2) $1,305.36 for petitioner's taxable year 2003.

Petitioner timely submitted to respondent's Appeals Office (Appeals Office) a written protest (petitioner's protest) with respect to the proposed adjustments in the August 22, 2006 30-day letter. In that protest, petitioner set forth the reasons for

its disagreement with those proposed adjustments and requested a conference with the Appeals Office.

By letter dated January 17, 2007, an Appeals officer with the Appeals Office who was assigned petitioner's protest (first Appeals officer) notified petitioner that a conference with the Appeals Office had been scheduled for 9 a.m. on January 26, 2007. At the request of petitioner, the first Appeals officer rescheduled that conference to February 26, 2007.

On February 26, 2007, the first Appeals officer held a conference (February 26, 2007 conference) with respect to the proposed adjustments in the August 22, 2006 30-day letter.

With respect to petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, September 30, and December 31, 2002, and March 31, September 30, and December 31, 2003, the first Appeals officer determined that petitioner is liable for an increase in petitioner's Form 941 taxes in an amount that was less than the increase proposed for each of those quarters in the August 22, 2006 30-day letter. With respect to the quarter ended June 30, 2003, the first Appeals officer determined that petitioner is liable for an increase in petitioner's Form 941 taxes in an amount that was greater than the increase proposed for that quarter in the August 22, 2006 30-day letter. The first Appeals officer determined that petitioner is liable for the quarters

indicated for the following increases in petitioner's Form 941 taxes:

| Quarter Ended | Increase in Form 941 Taxes |
|---|---|
| 3/31/02 | $18,702.29 |
| 6/30/02 | 18,702.29 |
| 9/30/02 | 18,702.29 |
| 12/31/02 | 18,702.29 |
| 3/31/03 | 27,455.58 |
| 6/30/03 | 27,455.58 |
| 9/30/03 | 27,455.58 |
| 12/31/03 | 27,455.58 |

On a date not disclosed by the record after February 26, 2007, the first Appeals officer sent petitioner a letter that pertained to: "**Tax Period(s) Ended:** 03/2002 06/2002 09/2002 12/2002 03/2003 06/2003 09/2003 12/2003".[2]  That letter stated in pertinent part:  "We are sorry that we couldn't reach a satisfactory agreement with you about the proposed additional employment taxes.  We are assessing the additional employment taxes in full."

On June 25, 2007, respondent assessed the following increases in petitioner's Form 941 taxes and interest as provided by law for the quarters ended March 31, June 30, and September

_____

[2]The record does not disclose whether the references in the first Appeals officer's letter to the tax periods ended "12/2002" and "12/2003" pertain to (1) the quarters ended Dec. 31, 2002, and Dec. 31, 2003, (2) petitioner's taxable years 2002 and 2003, or (3) both.

30, 2002, and March 31, June 30, September 30, and December 31, 2003:[3]

| Quarter Ended | Increase in Form 941 Taxes | Interest |
|---|---|---|
| 3/31/02 | $18,702.29 | $6,705.21 |
| 6/30/02 | 18,702.29 | 6,323.87 |
| 9/30/02 | 18,702.29 | 5,948.29 |
| 3/31/03 | 27,455.58 | 7,787.18 |
| 6/30/03 | 27,455.58 | 7,345.82 |
| 9/30/03 | 27,455.58 | 6,939.20 |
| 12/31/03 | 27,455.58 | 6,594.53 |

On June 25, 2007, respondent issued to petitioner a separate notice of balance due regarding any unpaid assessed amounts with respect to petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, and September 30, 2002, and March 31, June 30, September 30, and December 31, 2003.

Petitioner's authorized representative, Mark Eldridge (Mr. Eldridge), sent respondent a letter dated July 3, 2007 (July 3, 2007 letter). That letter stated in pertinent part:

> We do not understand why we got the enclosed 941 and
> 940 bills for 2002 and 2003.[4] These started as an
> employment tax audit by Paul Horn out of Des Moines,
> Iowa and then went to Janna Renner out of Kansas City,
> Missouri. We disagreed with her findings, so the audit
> went to * * * [the Appeals officer] out of Milwaukee,

---

[3]The record does not disclose whether respondent assessed an increase in petitioner's Form 941 taxes and interest as provided by law for the quarter ended Dec. 31, 2002. See infra note 5.

[4]The record does not explain why Mr. Eldridge referred in the July 3, 2007 letter to Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for each of petitioner's taxable years 2002 and 2003. In any event, that form is not involved in this case.

Wisconsin.  In a telephone conference the first part of Feb. 2007, * * * [the Appeals officer] said we had 30 days to agree to the tax and then the penalty and interest of $60,000 would be waived.  If we didn't agree, the case would then go to tax court.  We called * * * [the Appeals officer] and said we did not want to settle and asked if he was going to send us something in writing so we could reject the offer.  We heard nothing, until the enclosed bills came.  We want to appeal the employment audit, but have not been given the chance.  Therefore, we strongly disagree with the enclosed 940 and 941 bills.

In response to the July 3, 2007 letter, the first Appeals officer sent to Mr. Eldridge a letter dated July 11, 2007 (July 11, 2007 letter).  That letter stated in pertinent part:

> In response to your letter dated July 3, 2007 regarding your client Hassel Family Chiropractic employment tax assessments, you had your Appeals Conference with me in February of 2007 regarding this matter. Your client decided he did not want to agree to the additional employment taxes and wanted to proceed to Court to contest the additional taxes proposed.
>
> At that time you wanted to proceed to the United States Tax Court.  Our District Counsel determined that the issue in your client's case was not under the jurisdiction of the Tax Court and that you would have to proceed to the Court of Claims if you wanted to contest the taxes in Court.  That is why the taxes were directly assessed against your client.
>
> Your course of action would be to file a claim for refund.  When that claim is denied you then can petition the Court of Claims for their consideration.  My understanding of how the procedure works in order to petition the Court of Claims is that your client needs to pay the tax for one employee for one quarter and then file the claim for refund in order to start the Court process.  I would suggest your client consult with an attorney in order to follow the correct procedures in order to go to Court on this issue.

On July 19, 2007, respondent assessed the following increases in petitioner's Form 945 tax and interest as provided by law for petitioner's taxable years 2002 and 2003:

| Year | Increase in Form 945 Tax | Interest |
|------|--------------------------|----------|
| 2002 | $1,120.50 | $343.12 |
| 2003 | 1,305.36 | 322.07 |

On July 19, 2007, respondent issued to petitioner a separate notice of balance due regarding any unpaid assessed amounts with respect to petitioner's Form 945 tax for each of petitioner's taxable years 2002 and 2003.

By letter dated August 7, 2007 (August 7, 2007 letter), Mr. Eldridge informed respondent that petitioner was making a payment of $11,486.84 "for one worker Jaci Sterk for employment tax for one period." Mr. Eldridge enclosed with that letter petitioner's check in that amount that was payable to the United States Treasurer. Respondent applied that payment to petitioner's account with respect to the quarter ended March 31, 2002.

In the August 7, 2007 letter, Mr. Eldridge also informed respondent that pursuant to the first Appeals officer's July 11, 2007 letter petitioner was requesting a refund. On August 7, 2007, petitioner submitted to respondent Form 843, Claim for Refund and Request for Abatement (petitioner's refund claim), with respect to petitioner's Form 941 taxes for the "tax period From 1/1/02 to 12/31/02". In that form, petitioner requested that respondent issue to petitioner a refund of $11,486.84.

On October 1, 2007, respondent issued to petitioner a final notice of intent to levy and notice of your right to a hearing (notice of intent to levy) regarding any unpaid assessed amounts with respect to petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, and September 30, 2002, and March 31, June 30, September 30, and December 31, 2003.[5]

On October 19, 2007, petitioner timely submitted to respondent petitioner's Form 12153 with respect to the notice of intent to levy. In that form, petitioner indicated its disagreement with the notice of intent to levy and requested a hearing with the Appeals Office. In petitioner's Form 12153, petitioner indicated that its disagreement with the notice of intent to levy pertained only to petitioner's Form 941 taxes for each of the

_____

[5]The notice of intent to levy is not included as part of the record in this case. Respondent does not contend that that notice pertained to petitioner's Form 941 taxes for the quarter ended Dec. 31, 2002, and petitioner's Form 945 taxes for its taxable years 2002 and 2003. Indeed, with respect to petitioner's Form 941 taxes for the quarter ended Dec. 31, 2002, respondent acknowledges that the notice of intent to levy did not pertain to that quarter and that "Because the quarter was not included in the Final Notice, the petitioner still has its CDP rights with respect to this quarter." Moreover, the notice of determination concerning collection action(s) under sec. 6320 and/or 6330 (notice of determination) upon which this case is based stated, and petitioner does not dispute, that as of the date on which petitioner submitted to respondent Form 12153, Request for a Collection Due Process or Equivalent Hearing (petitioner's Form 12153), respondent had not issued to petitioner a notice of intent to levy with respect to petitioner's Form 941 taxes for the quarter ended Dec. 31, 2002, and petitioner's Form 945 tax for each of its taxable years 2002 and 2003.

quarters ended March 31, June 30, and September 30, 2002, and March 31, June 30, September 30, and December 31, 2003.[6] In petitioner's Form 12153, petitioner stated in pertinent part: "We believe there should be no levy as we are awaiting response on our claim per IRS papers. We believe the levy would not be proper as we might not owe anything."

By letter dated October 22, 2007 (October 22, 2007 letter), respondent acknowledged receipt of petitioner's Form 12153. That letter stated in pertinent part:

> We are forwarding your case to the Fresno, CA Appeals Office; they will be in contact with you within 60 days from the day of this letter. Please take all documentation that is pertinent to your case with you to your hearing.
>
> The total amount you owe [with respect to petitioner's Form 941 taxes] on the tax years shown above [the quarters ended March 31, 2002, June 30, 2002, September 30, 2002, March 31, 2003, June 30, 2003, September 30, 2003, and December 31, 2003] is $241,841.79, which includes penalty and interest figured to November 21, 2007. The total amount you owe on Form 945 tax year Dec. 2002 and Dec. 2003 is $3,267.34 and for Form 1120 tax year Dec. 2005 is $505.29, which includes penalty

---

[6]Petitioner attached to petitioner's Form 12153, inter alia, the notice of balance due that respondent issued to it with respect to petitioner's Form 945 tax for each of its taxable years 2002 and 2003. The record does not explain why petitioner attached those notices to petitioner's Form 12153 when petitioner indicated in that form that its disagreement with the notice of intent to levy pertained only to petitioner's Form 941 taxes with respect to each of the quarters ended Mar. 31, June 30, and Sept. 30, 2002, and Mar. 31, June 30, Sept. 30, and Dec. 31, 2003. See supra note 5.

and interest figured to December 15, 2007.[7] Penalties and interest will continue to accrue until the amount you owe is paid in full.

In response to respondent's October 22, 2007 letter, Mr. Eldridge sent respondent a letter dated October 26, 2007. That letter stated in pertinent part:

> We are in receipt of your letter dated October 22, 2007 * * *. At the top, you show that our Request for a Collection Due Process Hearing is regarding Form 941, Tax Period: Mar 2002, June 2002, Sept 2002, Mar 2003, June 2003, Sept 2003, and Dec 2003.
>
> Form 941, Tax Period Dec 2002 should also be included in this hearing. In addition, Form 945, Tax Year: Dec 2002 and Dec 2003 should also be included in this hearing. All of this information was included in all the correspondence throughout this process.
>
> We need these Forms and Tax Periods added to the hearing, as they should have been included from the beginning. Please let us know how we add these, if they are not already included. * * *

The Appeals officer who had been assigned petitioner's Form 12153 (second Appeals officer) sent to another authorized representative of petitioner, Paul Mixdorf (Mr. Mixdorf), a letter dated December 7, 2007. That letter stated in pertinent part:

> I also understand that you filed a claim for refund so you can proceed to District Court on the matter of the

---

[7]As discussed above, petitioner indicated in petitioner's Form 12153 that its disagreement with the notice of intent to levy pertained only to petitioner's Form 941 taxes with respect to each of the quarters ended Mar. 31, June 30, and Sept. 30, 2002, and Mar. 31, June 30, Sept. 30, and Dec. 31, 2003. The record does not explain why respondent referred in the October 22, 2007 letter to petitioner's Form 945 tax for each of its taxable years 2002 and 2003 and petitioner's Federal income tax for its taxable year 2005. See supra note 6.

underlying liability.  Please understand that if you file suit for refund the collection action will cease while you are in litigation.  Please also understand that you cannot argue the underlying liability in Appeals since you previously had an appeal.

On a date not disclosed by the record in December 2007, the second Appeals officer held a telephonic conference (December 2007 telephonic conference) with Mr. Mixdorf.  During that telephonic conference, the second Appeals officer explained to Mr. Mixdorf that petitioner was not entitled to challenge its liabilities with respect to petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, and September 30, 2002, and March 31, June 30, September 30, and December 31, 2003, because it already had had the opportunity to challenge those liabilities during the February 26, 2007 conference with the first Appeals officer.

During the December 2007 telephonic conference, Mr. Mixdorf informed the second Appeals officer (1) that petitioner intended to file a suit for refund in a United States District Court and (2) that, before filing such a lawsuit, petitioner was waiting for respondent to disallow petitioner's refund claim or six months to pass from the date on which petitioner had filed that claim.  The second Appeals officer agreed to suspend until March 31, 2008, any levy action regarding petitioner's liabilities with respect to petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, and September 30, 2002, and March 31,

June 30, September 30, and December 31, 2003, in order to allow petitioner sufficient time to file a suit for refund.

On January 10, 2008, the Appeals Office issued to petitioner a notice of determination that, like the notice of intent to levy,[8] pertained only to petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, and September 30, 2002, and March 31, June 30, September 30, and December 31, 2003.[9] That notice stated in pertinent part:

> **Summary of Determination**
> You requested a hearing in Appeals regarding a notice of intent to levy.  You questioned the underlying liability.  You paid a portion of the liability and filed a claim for refund before the Collection Due Process notice so you could file suit in District Court.
>
> We held a telephone conference with your representative.  We explained that you cannot argue with the underlying liability after you were given such rights in a prior appeal with the IRS Appeals office.
>
> We determined that levy action should be suspended until March 31, 2008.  We recognize that no levy action can be taken once you begin litigation regarding the underlying liability.  This should give adequate time to file suit in District Court regarding your claim for refund and the related employment tax liability.  This also approximates the waiting period for filing suit if the Service has not disallowed your claim in writing.
>
> We recommend collection be suspended under this collection due process case until after March 31, 2008.  Any

---

[8]See supra note 5.

[9]The notice of determination indicated that it pertained to: "**Tax Type/Form Number:**  Employment Tax/Form 941 * * * **Tax Period(s) Ended:**  03/2002 06/2002 09/2002 03/2003 06/2003 09/2003 12/2003".

further suspension will depend on your filing suit in District Court or filing a petition with the Tax Court.

The notice of determination included an attachment that

stated in pertinent part:

| TAXPAYER | TYPE OF TAX | PERIODS |
|---|---|---|
| Hassel Family Chiropractic DC PC | Employment Tax | 200203 through 200209, 200303 through 200312 |

Notice of intent to levy was sent to the taxpayer on 10-01-2007. The taxpayer timely requested a hearing and TC 520 cc 77 was input on the accounts to suspend collection and the collection statute. The 200212 period for 941's and the 200212 and 200312 period for form 945 annual return for withholding were requested to be added to the CDP case but no notice has been issued on those accounts by the time of the CDP hearing request.

### SUMMARY OF THE ISSUES
The taxpayer argued with the levy action and their underlying liability as they are waiting for IRS action on their claim.

A hearing was held and the taxpayer wants to pursue refund litigation in court to continue their argument over the assessed liabilities. They are still waiting for the Service to disallow their claim, or six months, so they can file suit for a refund of their payment.

We agreed that Appeals should issue a notice of determination, recommending that levy action be suspended until March 31, 2008, to allow sufficient time to file their refund litigation suit. This suspension period approximates the time period the Service should act on their claim before they can file suit for refund without a claim disallowance notice.

### RECOMMENDATION
Levy action should be suspended until March 31, 2008. If the taxpayer files for a refund suit in court, collection will be suspended while in that litigation. If the taxpayer petitions the Tax Court in regard to this CDP case, collection action will be suspended until it is resolved in Tax Court.

**BRIEF BACKGROUND**

Examination determinations were made in October of 2006 and they were timely appealed. A prior Appeals Officer and office sustained the examination determination and the assessments were made on the above accounts in June of 2007. These assessments constituted notice and demand. The accounts were not paid in full and no arrangements were made for payment so notice of intent to levy was sent to the taxpayer.

The prior Appeals Officer advised how to make a partial payment and file a claim so the taxpayer could file for refund litigation. The taxpayer made the partial payment [on] August 13, 2007 according to transcripts and filed a claim for refund on September 14, 2007 according to the copy in the file.

Normal procedures under claims would be for the taxpayer to wait six months before filing suit in court for refund, to give adequate time for the Service to issue a claim disallowance notice. Appeals is not sure when the claim was received by the Service as we don't have the original information in the file.

In the telephone conference there were no disagreements over the collection action in this case, outside of the argument that no levy action should be taken because of the claim action.

This Appeals Officer has not had other dealings with the taxpayer outside of this CDP case.

**DISCUSSION AND ANALYSIS**
**APPLICABLE LAW AND ADMINISTRATIVE PROCEDURES**

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, the Secretary is authorized to collection [sic] such tax by levy upon property belonging to the taxpayer. Section 6331(d) provides that the Secretary is obligated to provide the taxpayer with notice, including notice of the administrative appeals available to the taxpayer, before proceeding with collection by levy on the taxpayer's property.

Section 6330 generally provides that the Commissioner cannot proceed with the collection of taxes by way of a levy on a taxpayer's property until the taxpayer has

been given notice of, and the opportunity for, an administrative review of the matter in the form of an Appeals Office hearing, and, if dissatisfied, given an opportunity for judicial review of the administrative determination. * * *

Section 6330(c) prescribes the matters that may be raised by a taxpayer at an Appeals hearing. In summary, section 6330(c) provides that a taxpayer may raise collection issues such as spousal defenses and the appropriateness of the Commissioner's intended collection action.

In review of the file and transcripts, it appears that all manual and legal procedures have been properly followed. This Appeals Officer hasn't had prior involvement with the taxpayer.

The taxpayer argues with the underlying liability but understands that they cannot carry such argument to Appeals after being given a prior appeal. The taxpayer merely wants the Service to suspend collection or levy action while they pursue refund litigation regarding the underlying liability. Appeals finds that agreeable and determined a period of time in which levy action should be suspended until the taxpayer starts refund litigation, which will continue to suspend collection until resolved in court.

### RELEVANT ISSUES PRESENTED BY THE TAXPAYER
The relevant issues were addressed and noted above.

### BALANCING EFFICIENT COLLECTION AND INTRUSIVENESS
Levy action partially balances an efficient method of collection with the taxpayer's legitimate concerns that it be no more intrusive than necessary.

Levy action should be suspended until March 31, 2008, to give adequate time for the taxpayer to file for refund litigation. Collection enforcement will continue to suspend if the taxpayer files suit for refund litigation[10] or petitions Tax Court under this CDP case.

---

[10]The record does not disclose whether petitioner commenced refund litigation with respect to petitioner's refund claim after respondent issued the notice of determination.

## Discussion

The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). We conclude that there are no genuine issues of material fact regarding the questions raised in respondent's motion.

In the petition and in petitioner's response to respondent's motion, petitioner advances arguments in support of its position that it is entitled to challenge the existence and/or the amounts of its respective underlying liabilities with respect to (1) petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, September 30, and December 30, 2002, and March 31, June 30, September 30, and December 31, 2003, and (2) petitioner's Form 945 taxes for each of its taxable years 2002 and 2003.

We turn first to petitioner's arguments regarding peti- tioner's Form 941 taxes for the quarter ended December 31, 2002, and petitioner's Form 945 tax for each of its taxable years 2002 and 2003. The record establishes, and petitioner does not dispute, that the notice of determination pertained only to petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, and September 30, 2002, and March 31, June 30, September 30, and December 31, 2003, and not to petitioner's Form

941 taxes for the quarter ended December 31, 2002, and peti-
tioner's Form 945 tax for each of its taxable years 2002 and
2003.[11]  We hold that we do not have jurisdiction under section
6330(d)(1) over petitioner's Form 941 taxes for the quarter ended
December 31, 2002, and petitioner's Form 945 tax for each of
petitioner's taxable years 2002 and 2003.

We turn now to petitioner's arguments regarding petitioner's
Form 941 taxes for each of the quarters ended March 31, June 30,
and September 30, 2002, and March 31, June 30, September 30, and
December 31, 2003.  A taxpayer may raise challenges to the
existence or the amount of the taxpayer's underlying tax liabil-
ity if the taxpayer did not receive a notice of deficiency or did
not otherwise have an opportunity to dispute the tax liability.
Sec. 6330(c)(2)(B).  As pertinent here, section 301.6330-1(e)(3),
Q&A-E2, Proced. & Admin. Regs., provides:

> Q-E2.  When is a taxpayer entitled to challenge
> the existence or amount of the tax liability specified
> in the CDP Notice?
>
> A-E2.  A taxpayer is entitled to challenge the
> existence or amount of the underlying liability for any
> tax period specified on the CDP Notice if the taxpayer
> did not receive a statutory notice of deficiency for
> such liability or did not otherwise have an opportunity
> to dispute such liability. * * * An opportunity to
> dispute the underlying liability includes a prior
> opportunity for a conference with Appeals that was
> offered either before or after the assessment of the
> liability.  An opportunity for a conference with Ap-
> peals prior to the assessment of a tax subject to

---

[11]See supra note 5.

deficiency procedures is not a prior opportunity for this purpose.[12]

See <u>Lewis v. Commissioner</u>, 128 T.C. 48 (2007) (upholding the validity of section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.).

As pertinent here, the August 22, 2006 30-day letter notified petitioner that respondent was proposing adjustments to petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, and September 30, 2002, and March 31, June 30, September 30, and December 31, 2003. Petitioner timely submitted to respondent a protest with respect to those adjustments and requested a conference with the Appeals Office. On February 26, 2007, the Appeals Office held a conference with respect to respondent's proposed adjustments to petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, and September 30, 2002, and March 31, June 30, September 30, and December 31, 2003. On the record before us, we find that petitioner may not challenge the existence or the amounts of its respective underlying liabilities with respect to those taxes for each of those quarters.

Where, as is the case here, the validity of the underlying tax liability is not properly placed at issue, the Court will

---

[12]Petitioner does not dispute that respondent's proposed adjustments to petitioner's Form 941 taxes for each of the quarters at issue are not subject to the deficiency procedures under secs. 6212 and 6213.

review the determination of the Commissioner of Internal Revenue for abuse of discretion. <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000).

Based upon our examination of the entire record before us, we find that respondent did not abuse respondent's discretion in making the determinations in the notice of determination with respect to petitioner's Form 941 taxes for each of the quarters ended March 31, June 30, and September 30, 2002, and March 31, June 30, September 30, and December 31, 2003.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

On the record before us, we shall grant respondent's motion.

To reflect the foregoing,

<u>An order granting respondent's</u>
<u>motion and decision for respondent</u>
<u>will be entered</u>.