T.C. Memo. 2020-47

UNITED STATES TAX COURT

PATRICK'S PAYROLL SERVICES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20245-18L.                    Filed April 14, 2020.

<u>Joseph Falcone</u>, for petitioner.

<u>Michael C. Dancz</u> and <u>John Q. Walsh, Jr.</u>, for respondent.

MEMORANDUM OPINION

URDA, <u>Judge</u>:  In this collection due process (CDP) case Patrick's Payroll

Services, Inc. (Patrick's Payroll), seeks review pursuant to section 6330(d)(1)[1] of

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  We round all monetary amounts to the

(continued...)

[*2] the determination of the Internal Revenue Service (IRS) Office of Appeals[2] to uphold a notice of intent to levy to collect its outstanding 2010 and 2011 employment tax liabilities as well as associated penalties and additions to tax. Specifically, Patrick's Payroll seeks to challenge its underlying liabilities and raises no other issues.

Respondent has moved for summary judgment under Rule 121, contending that no disputed issues of material fact remain, that Patrick's Payroll is barred from challenging its underlying liabilities, and that the settlement officer acted within his discretion in upholding the levy action. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits. See Rule 121(b). Patrick's

---

[1](...continued)
nearest dollar.

[2]On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. See Taxpayer First Act, Pub. L. No. 116-25, sec. 1001, 133 Stat. at 983 (2019). As the events in this case predated that change, we will use the name in effect at the times relevant to this case, i.e., the Office of Appeals.

**[\*3]** Payroll had its principal place of business in Monroe, Michigan, when it timely filed its petition.

A.    2010 and 2011 Tax Liabilities

Patrick's Payroll was an employee leasing company that provided payroll services in 2010 and 2011 to one client, a private security company for whom the owner of Patrick's Payroll worked as a security guard.  Patrick's Payroll treated the security company's workers as its own employees, paying their wages and issuing Forms W-2, Wage and Tax Statement, to them during 2010 and 2011.  It failed, however, to pay over the required Federal employment taxes to the IRS and did not file the required Federal employment tax returns (Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, and Form 941, Employer's Quarterly Federal Tax Return) for 2010 and 2011.

By 2015 the IRS had launched an examination into the 2010 and 2011 employment tax liabilities relating to the security company's leased workers. During the examination Patrick's Payroll pleaded ignorance of the requirement to file the employment tax returns, failed to introduce any documentation, and refused interview requests from the IRS.

The revenue agent conducting the examination thereafter discussed with her immediate supervisor her intention to assert additions to tax under

[*4] section 6651(a)(1) and (2) (for failure to timely file and pay, respectively) and penalties under section 6656 (for failure to deposit taxes) with respect to the 2010 and 2011 employment tax liabilities. On June 28, 2016, the supervisor approved in writing the revenue agent's proposed assertion of additions to tax and penalties.

On April 24, 2017, the revenue agent sent Patrick's Payroll a Letter 950-D (30-day letter) proposing employment tax liabilities, along with the foregoing additions to tax and penalties, totaling $985,627 for 2010 and 2011. The 30-day letter informed Patrick's Payroll that it could contest the proposed changes by requesting a conference with the Office of Appeals within 30 days of the date of the letter. Patrick's Payroll did not do so. The revenue agent accordingly closed the case in August 2017, and the IRS assessed the amounts set forth in the 30-day letter.

B.    CDP Proceeding

To collect the unpaid 2010 and 2011 liabilities of Patrick's Payroll, the IRS issued a notice of intent to levy, which apprised Patrick's Payroll of its right to request a CDP hearing pursuant to section 6330(a). Patrick's Payroll filed a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing, on which it requested that its account be placed in currently not collectible (CNC) status for 2010 and 2011 as a collection alternative. It also disputed the

**[*5]** calculation of the underlying liabilities, asserting that it had begun operations in September 2010 and thus was not responsible for employment taxes before that time. Patrick's Payroll did not identify any other issues on the form.[3]

The case thereafter was assigned to a settlement officer in the Office of Appeals. On May 30, 2018, the settlement officer sent Patrick's Payroll a letter scheduling a telephone CDP hearing. Among other things the settlement officer requested that Patrick's Payroll submit a Form 433-B and a specific proposal for its collection alternative within 14 days, emphasizing that he could not consider any collection alternatives without such information. Patrick's Payroll again did not provide the requested information.

The telephone CDP hearing was held on July 25, 2018. During the hearing a representative of Patrick's Payroll admitted that the company had failed to timely file the Forms 941 for 2010 and 2011 and conceded that it owed "some tax". The representative nonetheless challenged the "apportionment" of the underlying employment tax liabilities, noting, among other things, that Patrick's Payroll was

---

[3]After receiving the Form 12153, the IRS issued a Letter 5139, which informed Patrick's Payroll that it was required to file all Federal tax returns and to submit a Form 433-B, Collection Information Statement for Businesses, in order to be eligible for the proposed collection alternative. Patrick's Payroll did not take any action in response to this letter.

**[*6]** defunct as of October 2011 and had no assets.[4]  Although the representative was unable to offer details about the purported apportionment, the settlement officer agreed to provide account transcripts and audit workpapers for his review. The settlement officer also requested that Patrick's Payroll provide information about any collection alternative within two weeks (by August 8).

On August 2 Patrick's Payroll sent the settlement officer a copy of its draft Form 1120, U.S. Corporation Income Tax Return, for 2011 and a document showing that its bank account was opened on September 7, 2010, and closed on October 11, 2011.  Patrick's Payroll did not provide any more detailed financial information or information about collection alternatives.  Having heard nothing more from Patrick's Payroll by September 7, 2018, the settlement officer closed the case.

The Office of Appeals thereafter issued a notice of determination sustaining the proposed levy action against Patrick's Payroll and rejecting its request for a collection alternative.  The notice stated that Patrick's Payroll had failed to offer any response to the IRS transcripts and audit workpapers regarding its underlying liabilities and that no collection alternative could be considered because Patrick's

---

[4]The record indicates that Patrick's Payroll was dissolved as of July 15, 2013.

**[*7]** Payroll had failed to provide the financial information necessary to conduct a proper analysis.

C.    Tax Court Proceedings

Patrick's Payroll filed a timely petition with this Court seeking review of the notice of determination.  Respondent subsequently filed a motion for summary judgment to which Patrick's Payroll responded.

Discussion

I.    Jurisdiction

The corporate petitioner in this case, Patrick's Payroll, was dissolved in 2013, and we must consider its capacity to engage in litigation in our Court.  See Rule 60(c); see also NT, Inc. v. Commissioner, 126 T.C. 191, 193-194 (2006); David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. 268, 269-271 (2000), aff'd, 22 F. App'x 837 (9th Cir. 2001).  "If a petitioner lacks capacity, this Court has held that it must dismiss the case for lack of jurisdiction."  Brannon's of Shawnee, Inc. v. Commissioner, 71 T.C. 108, 111 (1978); see also Central Motorplex, Inc. v. Commissioner, T.C. Memo. 2013-286.

A corporation's capacity to engage in litigation in this Court is determined by the law under which the corporation was organized, which in this case is the law of Michigan.  See Rule 60(c).  Generally, Michigan law provides that a

**[*8]** dissolved corporation "shall continue to function in the same manner as if dissolution had not occurred", and it "may sue and be sued in its corporate name * * * in the same manner as if dissolution had not occurred." Mich. Comp. Laws Ann. sec. 450.1834 (West 2020). However, Michigan law also provides that a dissolved corporation "shall continue its corporate existence but shall not carry on business except for the purpose of winding up its affairs" by, inter alia, "[p]aying its debts and other liabilities." See id. sec. 450.1833(c). Reading the statutes together, Michigan courts have held that a dissolved Michigan corporation has a reasonable period to wind up its affairs, including pursuing litigation. See, e.g., Flint Cold Storage v. Dep't of Treasury, 776 N.W.2d 387, 394-396 (Mich. Ct. App. 2009).

We conclude that Patrick's Payroll's litigation in this Court began within a reasonable period after its dissolution. Patrick's Payroll was dissolved on July 15, 2013. The record shows that the IRS had launched its examination into the underlying employment tax liabilities by 2015, closed its examination and assessed the tax liabilities in 2017, and then began collection actions in 2018. After the Office of Appeals issued a notice of determination on September 19, 2018, upholding the proposed levy action, Patrick's Payroll timely appealed to this

**[\*9]** Court under section 6330(d)(1). Its actions since have been consistent with an effort to wind up its affairs.

In short, under Michigan law Patrick's Payroll continues in existence for purposes of this proceeding and has the legal capacity to maintain this suit.

II.     Governing Standards

A.     Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Id. However, the nonmoving party may not rest upon the mere allegations or denials of its pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

**[*10]** B.     Standard of Review

We have jurisdiction to review the Office of Appeals' determination pursuant to section 6330(d)(1).  See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).  Where the validity of the underlying tax liability is properly at issue, we review the determination regarding the underlying tax liability de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  We review all other determinations for abuse of discretion.  Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.  In reviewing for abuse of discretion we must uphold the Office of Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law.  See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009).

III.     Underlying Liability

Patrick's Payroll has challenged its 2010 and 2011 underlying liabilities both in its CDP hearing and in this Court.  A taxpayer may raise a challenge to his underlying liability in a CDP hearing only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).  The phrase "underlying tax

[*11] liability" includes the tax deficiency, any penalties and additions to tax, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339 (2000).

In determining whether the taxpayer had an opportunity to dispute his liability, the regulations distinguish between liabilities that are subject to deficiency procedures and those that are not. Employment tax liabilities are not subject to deficiency procedures. See Romano-Murphy v. Commissioner, 152 T.C. 278, 292 (2019), supplementing T.C. Memo. 2012-330; see also Durda v. Commissioner, T.C. Memo. 2017-89, at *6-*7. With respect to such liabilities, the regulations provide that "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability." Sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

Patrick's Payroll does not dispute that it received a 30-day letter affording it the opportunity to contest its 2010 and 2011 underlying liabilities before the Office of Appeals. Nor does it deny that it did not timely request the conference. Rather, Patrick's Payroll challenges the validity of section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., and argues that a prior opportunity for a conference with the Office of Appeals does not constitute an "opportunity to dispute such tax liability" within the meaning of section 6330(c)(2)(B) and should

**[*12]** not preclude its liability challenge. We have consistently rejected this argument[5] as have all the Courts of Appeals that have considered the issue. See Lewis v. Commissioner, 128 T.C. 48, 60-61 (2007) (concluding that a conference with the Office of Appeals provides a taxpayer a meaningful opportunity to dispute an underlying tax liability); Bletsas v. Commissioner, T.C. Memo. 2018-128, at *8-*9, aff'd, 784 F. App'x 835 (2d Cir. 2019); Thompson v. Commissioner, T.C. Memo. 2012-87, 103 T.C.M. (CCH) 1470, 1472 (2012); see also Our Country Home Enters., Inc. v. Commissioner, 855 F.3d 773, 783-791 (7th Cir. 2017); Keller Tank Servs. II, Inc. v. Commissioner, 854 F.3d 1178, 1195-1200 (10th Cir. 2017); Iames v. Commissioner, 850 F.3d 160, 164-165 (4th Cir. 2017); Hassell Family Chiropractic, DC, PC v. Commissioner, 368 F. App'x 695, 696 (8th Cir. 2010), aff'g T.C. Memo. 2009-127.

Patrick's Payroll offers us no persuasive reason to reconsider our well-established precedent on this point, and we accordingly conclude that it is

---

[5]Patrick's Payroll acknowledges that this Court's precedent on this point resolves this case. It nonetheless makes this argument to preserve its legal theory for further review.

[*13] precluded from challenging its underlying liabilities for its 2010 and 2011 tax years.[6]

IV.    Abuse of Discretion

We next consider whether the settlement officer:  (1) properly verified that the requirements of applicable law or administrative procedure have been met; (2) considered any relevant issues Patrick's Payroll raised; and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of  * * * [Patrick's Payroll] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).  Our review of the record establishes that the settlement officer satisfied all of these requirements.

A.    Verification

As an initial matter, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing.  See Hoyle v. Commissioner, 131 T.C. 197, 200-203 (2008),

---

[6]Although Patrick's Payroll cannot challenge its underlying liabilities for 2010 and 2011 in a CDP proceeding, our ruling does not preclude Patrick's Payroll from (1) seeking audit reconsideration with the IRS (although such reconsideration is not subject to judicial review) or (2) paying the liabilities and claiming a refund and, if the refund is disallowed, litigating that claim in the Court of Federal Claims or the appropriate Federal District Court.

**[\*14]** <u>supplemented by</u> 136 T.C. 463 (2011). Patrick's Payroll does not allege in its petition that the settlement officer failed to satisfy this requirement, and we conclude, from our review of the record, that the settlement officer conducted a thorough review of the account transcripts and verified that all applicable requirements were met.[7]

### B. <u>Issues Raised</u>

Patrick's Payroll raised only one issue in the Office of Appeals aside from its underlying liability challenge; it requested as a collection alternative that its account be placed in CNC status. It did not raise this issue in its petition, however, and thus has conceded the point. <u>See</u> Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); <u>see also</u> <u>CreditGuard of Am., Inc. v. Commissioner</u>, 149 T.C. 370, 379 (2017).

Even had Patrick's Payroll properly raised the issue, its repeated failure to submit the financial information requested during the CDP proceeding would

---

[7]"Where the supervisory approval requirement of section 6751(b)(1) applies, the Appeals officer should obtain verification that such approval was obtained". <u>ATL & Sons Holdings, Inc. v. Commissioner</u>, 152 T.C. 138, 144 (2019). However, the approval requirement of sec. 6751(b)(1) does not apply to additions to tax under sec. 6651(a)(1) and (2). <u>See</u> sec. 6751(b)(2)(A). To the extent that the approval requirement applies to the sec. 6656(a) penalties assessed against Patrick's Payroll, the IRS satisfied it because the record reflects that the revenue agent's immediate supervisor approved in writing her assertion of sec. 6656(a) penalties before she issued the 30-day letter.

**[\*15]** justify our sustaining the settlement officer's rejection of its proposed collection alternative.  See, e.g., Gilmore v. Commissioner, T.C. Memo. 2019-97, at \*15; Eichler v. Commissioner, T.C. Memo. 2018-161, at \*11; see also sec. 301.6330-1(e)(1), (f)(2), Q&A-F3, Proced. & Admin. Regs.

The settlement officer's rejection of the collection alternative in this case accordingly did not represent an abuse of discretion.

C.  Balancing

Patrick's Payroll did not allege in its petition or argue at any later point that the settlement officer failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C).  It thus has conceded this issue too.  See Rules 121(d), 331(b)(4); see also Ansley v. Commissioner, T.C. Memo. 2019-46, at \*19.  In any event we see nothing to disturb the settlement officer's express conclusion in the notice of determination that the proposed levy action balanced the need for efficient tax collection with any legitimate concerns of Patrick's Payroll about intrusiveness.

[*16] V.    Conclusion

Finding no abuse of discretion in any respect, we will grant summary judgment to respondent and affirm the IRS' determination to sustain the notice of intent to levy issued to Patrick's Payroll relating to its 2010 and 2011 tax years.

To reflect the foregoing,

An appropriate order and decision will be entered.