# United States Tax Court

T.C. Summary Opinion 2023-29

RAYMOND S. EDWARDS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 2237-20SL.                    Filed September 27, 2023.

———————

Raymond S. Edwards, pro se.

*Mehrin Bakht*, for respondent.


SUMMARY OPINION

PANUTHOS, *Special Trial Judge*: This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the Petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

In this collection due process (CDP) case, petitioner seeks review pursuant to sections 6320(c) and 6330(d)(1) of the supplemental determination by the Internal Revenue Service (IRS or respondent) relating to his Form 941, Employer's Quarterly Federal Tax Return, for the periods ending March 31, June 30, September 30, and December 31, 2015, and March 31, 2016, and his Form 940, Employer's Annual

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times.

Federal Unemployment (FUTA) Tax Return, for the period ending December 31, 2015.

In a notice of supplemental determination dated January 2, 2020, the IRS sustained the lien action for petitioner's employment tax liabilities for the periods ending March 31, 2015, through March 31, 2016, and petitioner's FUTA tax liability for the period ending December 31, 2015.

The issues for decision are (1) whether petitioner's failure to timely file returns and timely pay employment taxes was due to reasonable cause and not willful neglect, such that he is not liable for additions to tax for the periods in issue and (2) whether respondent abused his discretion in the application of petitioner's voluntary payments.

*Background*

While a stipulation of facts was not agreed to, respondent offered proposed Exhibits to which petitioner did not object. The record consists of a number of documents and petitioner's testimony.

Petitioner was a resident of New York when he timely filed the Petition.

Petitioner operated a daycare center business in Brooklyn, New York, that he started in September 2014. Between October 2015 and February 2016 the entity license for the daycare was suspended. During this time petitioner continued to pay employees. Petitioner did not timely file his quarterly Forms 941 for the periods ending June 30, September 30, and December 31, 2015, and did not timely file his Form 940 for the period ending December 31, 2015.

The IRS assessed tax liabilities for the periods at issue, plus additions to tax and interest. On February 14, 2019, the IRS sent petitioner a Notice of Federal Tax Lien (NFTL) filing. Petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, on March 7, 2019.

I.    *Initial CDP Hearing*

The IRS Independent Office of Appeals (Appeals) assigned the case to an Appeals officer (AO). On August 6, 2019, the AO issued petitioner a letter to schedule a teleconference on September 25, 2019,

and requested a Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, a Form 656, Offer in Compromise, proof that petitioner was paying his current estimated tax payments, and proof that petitioner was making his current federal tax deposits. Petitioner did not contact the AO on September 25, 2019, nor did he provide any of the requested documents.

Petitioner obtained representation from Handel Edwards, a financial planner, who contacted the AO and requested an abatement of penalties. The AO informed Mr. Edwards that requesting abatement for the failure to pay addition to tax was premature because petitioner had not yet paid the tax. The AO suggested proposing an installment agreement or alternatively providing the previously requested financial information so that Appeals could calculate petitioner's ability to pay. Petitioner was informed that he had until November 22, 2019, to either accept the proposed installment plan or to make contact to discuss alternatives. Petitioner did not accept the installment plan, nor did he contact the AO to discuss alternatives.

A notice of determination was issued on January 2, 2020, sustaining the NFTL filing.

In July 2021 petitioner submitted a check to the U.S. Treasury for $35,524. The check specified that the amount was to be applied against the Form 941 principal amounts for the first quarter of 2015 through the first quarter of 2016. This payment was intended to be applied to the principal tax only, which amounted to $23,547. Contrary to petitioner's directions, the $35,524 was not applied solely against the outstanding total principal of $23,547, but against the total amounts remaining outstanding for the periods ending March 31, June 30, September 30, and December 31, 2015 (which included penalties and interest). The remaining balance of the amount paid in July 2021 ($1,435) was applied against the total amount remaining outstanding for the period ending March 31, 2016. After the payment was applied, there remained an unpaid tax liability including additions to tax and interest.

II.  *Supplemental CDP Hearing*

On January 24, 2022, the Court issued an order remanding petitioner's case to Appeals for a supplemental CDP hearing. Appeals assigned the case to a settlement officer (SO).

Petitioner informed the SO that a delay in obtaining an unexpired PIN from the IRS caused the delays in setting up an Intuit account with the Electronic Federal Tax Payment System (EFTPS) to electronically and timely file and pay his taxes. Petitioner was informed of alternative methods to file and submit payments by the SO over the phone. The instructions for getting help filing taxes while an EFTPS is being set up were available during the periods at issue. Petitioner set up the EFTPS system in February 2016.

On July 8, 2022, the SO determined that petitioner did not meet the criteria for abatement. Accordingly, Appeals issued a Supplemental Notice of Determination Concerning IRS Collection Actions under Internal Revenue Code Sections 6320 or 6330, sustaining the NFTL filing.

*Discussion*

I.     *Standard of Review*

Sections 6320(c) and 6330(d)(1) grant this Court jurisdiction to review an SO's supplemental determination after a CDP hearing. Section 6330(c)(2) prescribes the matters that a taxpayer may raise at a CDP hearing, including spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Where the validity of the underlying tax liability is properly in issue, the Court reviews the SO's supplemental determination de novo. *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where the validity of the underlying tax liability is not properly in issue, the Court will review the SO's administrative supplemental determination for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000).

"A taxpayer's underlying tax liability includes penalties and additions to tax that are part of the unpaid tax that the Commissioner seeks to collect." *Dykstra v. Commissioner*, T.C. Memo. 2017-156, at *16. A taxpayer has not had an opportunity to dispute the underlying tax liability before a CDP hearing where the Commissioner assessed the tax reported in the taxpayer's return and did not issue the taxpayer a notice of deficiency. *See Shaddix v. Commissioner*, T.C. Memo. 2022-11. In determining whether the taxpayer had an opportunity to dispute his liability, the regulations distinguish between liabilities that are subject to deficiency procedures and those that are not. Employment tax liabilities are not subject to deficiency procedures. *See Romano-Murphy v. Commissioner*, 152 T.C. 278, 292 (2019), *supplementing* T.C. Memo.

2012-330; *see also Durda v. Commissioner*, T.C. Memo. 2017-89, at *6–7. With respect to such liabilities, the regulations provide that "[a]n opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability." Treas. Reg. § 301.6320-1(e)(3), Q&A-E2.

Petitioner's liabilities stem from the tax he reported in his untimely and timely filed returns, and respondent did not issue petitioner a notice of deficiency. Petitioner did not have a prior opportunity to dispute the liabilities at issue. Therefore, the underlying tax liabilities are at issue and the standard of review is de novo.[2]

When this Court remands a case to Appeals, we review the position taken in the last supplemental determination instead of any prior notices. *See Kelby v. Commissioner*, 130 T.C. 79, 86 (2008). We review the supplemental notice of determination regarding the additions to tax de novo.

II.     *Additions to Tax*

   A.     *Burden of Proof*

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return, determined with regard to any extension of time for filing, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Section 6651(a)(2) provides for an addition to tax for failure to timely pay the amount of tax shown on a return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Under section 7491(c), the Commissioner bears the burden of production with respect to additions to tax. If the Commissioner meets this burden, the taxpayer has the burden of proving that the failure to timely file or pay was due to reasonable cause and not willful neglect. *See* § 6651(a)(1) and (2); *Higbee v. Commissioner*, 116 T.C. 438, 447 (2001).

---

   [2] Respondent initially indicated the Court should review the SO's determination under an abuse of discretion standard. Upon direction by the Court, respondent filed a posttrial memo and agreed that the Court should review the SO's determination de novo.

B.     *Failure to Timely File*

Section 6651(a)(1) provides for an addition to tax of 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file the return, not to exceed 25% in total. Because the record shows that petitioner's employment tax returns for the periods ending June 30, September 30, and December 31, 2015, and the FUTA return for the period ending December 31, 2015, were not timely filed, respondent has met his burden of production. Consequently, petitioner has the burden of showing that his failure to file was due to reasonable cause and not willful neglect. *See* § 6651(a)(1); *Higbee,* 116 T.C. at 447.

Whether a taxpayer had "reasonable cause" and lacked "willful neglect" are questions of fact, and the burden of establishing these facts is on the taxpayer. *United States v. Boyle*, 469 U.S. 241, 245 (1985). To prove reasonable cause for failure to timely file a return, the taxpayer must show that he exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. *Crocker v. Commissioner*, 92 T.C. 899, 913 (1989); Treas. Reg. § 301.6651-1(c)(1). A taxpayer can show that he did not act with "willful neglect" if he can "prove that the late filing did not result from a 'conscious, intentional failure or reckless indifference.'" *Niedringhaus v. Commissioner*, 99 T.C. 202, 221 (1992) (quoting *Boyle*, 469 U.S. at 245–46).

Petitioner testified that after filing his first two payroll tax returns, he believed he would be unable to file accurate returns using the method he had used for the first two returns. Petitioner sought advice on paying payroll taxes and began efforts to implement an EFTPS. Petitioner contends that his failure to timely file was due to delay in receiving a PIN from the IRS to set up an EFTPS. However, on the basis of the record, we cannot conclude that the IRS was at fault for the delayed PIN. Further, a delayed PIN is not reasonable cause to excuse an untimely filing. There were alternative methods petitioner could have used to file returns, and petitioner has not demonstrated that these methods were otherwise unavailable. *See Boyle*, 469 U.S. at 249–50 ("Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations . . . ."). The SO noted: "IRS research shows the T[axpayer] started out filing and paying his first quarter operating timely, and mad[e] a partial F[ailure to Deposit] for his second quarter operating, so this indicates he must have had some

knowledge or was receiving guidance from somewhere on the filing/F[ailure to Deposit] responsibilities." At trial petitioner admitted that during the March 31, 2015, to March 31, 2016, periods, he did not attempt to file payroll or FUTA returns. We are not persuaded that petitioner's unsuccessful effort over the course of a year to implement a tax system when other methods of paying the tax were available, demonstrate reasonable cause and establish that he did not act with willful neglect.

There is an apparent inconsistency within respondent's records regarding the addition to tax for failure to timely file assessed on petitioner's Form 941 filing for the period ending March 31, 2015. The addition to tax for failure to timely file is inconsistent with the SO's notes and the account record for the period ending March 31, 2015. In the account transcript and the SO's notes, it appears that petitioner timely filed the Form 941 for the period ending March 2015 but was assessed an addition to tax for failure to timely file. The SO noted: "The penalties assessed as [Failure to Deposit], [Failure to Pay], [Failure to Timely File]. A review of IDRS[3] shows the following: . . . [March 2015 period] - filed timely on 4/30/2015." Additionally, petitioner's account record for the Form 941 return for the period ending March 2015 reflects that petitioner's March 2015 Form 941 "[r]eturn due date or return received date (whichever is later)" is April 30, 2015. This account record indicates that petitioner was assessed a "[p]enalty [of $1,320] for filing tax return after the due date." On the basis of respondent's own records and notes, we are not satisfied petitioner was correctly assessed an addition to tax for failure to timely file his Form 941 for the period ending March 31, 2015.

On the basis of the foregoing, we sustain respondent's supplemental determination except to the extent that petitioner is not liable for the addition to tax for failure to timely file the Form 941 for the period ending March 31, 2015.

C.     *Failure to Timely Pay*

Section 6651(a)(2) provides for an addition to tax when a taxpayer fails "to pay the amount shown as tax on any return . . . on or before the date prescribed for payment of such tax." Because the record shows that

---

[3] The IRS uses a computer interface called the IDRS to retrieve data from those systems. Upon request from an authorized person, the IRS can generate transcripts of account to show some of the information stored in its computer systems. *See generally Internal Revenue Manual* 21.2.3 (Sept. 6, 2022).

petitioner's employment tax returns for the periods ending March 31, June 30, September 30, and December 31, 2015, and March 31, 2016, and FUTA return for the period ending December 31, 2015, were not timely paid, respondent has met his burden of production. Consequently, petitioner has the burden of showing that his failure to pay was "due to reasonable cause and not due to willful neglect." § 6651(a)(2).

A taxpayer may show reasonable cause for failure to pay timely by showing he exercised ordinary business care and prudence in providing for payment of his tax liability but was either unable to pay the tax or would have suffered undue hardship if he had paid the tax on the due date. *Fran Corp. v. United States*, 164 F.3d 814, 816 (2d Cir. 1999); *Russell v. Commissioner*, T.C. Memo. 2011-81, 2011 WL 1314673, at *8 n.9; Treas. Reg. § 301.6651-1(c)(1). Paying the tax on the due date creates an undue hardship for a taxpayer if making the payment on time creates "the risk of a substantial financial loss." *Ruggeri v. Commissioner*, T.C. Memo. 2008-300, 2008 WL 5411919, at *4 (quoting *Merriam v. Commissioner*, T.C. Memo. 1995-432, 1995 WL 522813, at *13, *aff'd*, 107 F.3d 877 (9th Cir. 1997) (unpublished table decision)). We consider whether a taxpayer exercised ordinary business care and prudence by applying a facts and circumstances test.

Petitioner testified that when he finally filed the payroll tax returns in February 2016, he was experiencing a cashflow problem due to the closure of his business. Petitioner asserts that paying the tax on the due date would have caused irreparable harm to his business. During this time, instead of decreasing personnel and decreasing expenses, petitioner continued to pay his employees. Petitioner testified he was afraid they would leave for other jobs if he did not. Petitioner was provided multiple opportunities to provide financial documents demonstrating the risk of substantial financial loss that he would have endured. *See Ruggeri v. Commissioner*, 2008 WL 5411919, at *4. Petitioner failed to provide such documents. As a result, we are unable to conclude from the record before us that petitioner was unable to pay or would have endured undue hardship by paying the tax on the due date.

Even if we were to conclude that petitioner was unable to pay or would suffer undue hardship, he provided no evidence as to why he was unable to pay the amounts due once the business was reopened in March 2016.

We sustain respondent's determination with respect to the failure to pay addition to tax.

III.  *Designated Payment*

Petitioner also asserts that respondent abused his discretion in applying petitioner's voluntary payment in a manner other than that directed by petitioner.

A taxpayer may "designate how voluntary tax payments should be applied" by the IRS. *Dixon v. Commissioner*, 141 T.C. 173, 185 (2013). The IRS "must honor a taxpayer's designation of a voluntary tax payment." *Id.* at 186; *see also* § 6656(e)(1). The designation of payments does not go to the underlying tax liability, so the proper standard of review is abuse of discretion. *See Melasky v. Commissioner*, 151 T.C. 89, 92 (2018), *aff'd*, 803 F. App'x 732 (5th Cir. 2020); *Goza*, 114 T.C. at 181–82. An abuse of discretion occurs if the AO exercises his discretion "arbitrarily, capriciously, or without sound basis in fact or law." *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999).

Petitioner contends that the check for $35,524 submitted on July 14, 2021, was meant to be applied against the outstanding Form 941 principal tax amounts for the periods between March 2015 and March 2016. However, this payment was applied against the total outstanding Form 941 liabilities for the March 31, June 30, September 30, and December 31, 2015, periods, which included additions to tax and interest. As a result of the IRS application of the payment, there were insufficient funds to pay off the total outstanding liability in full for the period ending March 2016.

As indicated, petitioner's July 14, 2021, check specifies "941 Principal amounts for 1ˢᵗ qrt 2015 – 1 qrt 2016" on the memo line. The SO noted on April 5, 2022:

> T[axpayer] made a payment to IRS on 7/14/2021 with the intent for it to be applied to principal tax only, he provided a copy of the [payment] proving this. A review of each module shows the total unpaid tax on the account was $23,546.70, his payment was $35,524.37, which he stated was provided for him by IRS customer service. Therefore, although the [payments] were not applied properly, the [taxpayer] has sufficiently paid for the tax on the included mod[ule]s.

Additionally, the SO noted that the "IDRS does not show the tax as being paid since [payments] directed for the tax were also applied to Pen[alties]/Int[erest]. The T[axpayer] did not want any of the [payment] to be applied to pen[alties]/int[erest] since he was disputing the penalties." The SO acknowledged that petitioner finally paid the back taxes in full in July 2021.

The record clearly demonstrates that petitioner intended to designate how the tax payment should be applied, namely, to pay off the remaining principal tax amounts owed for the relevant periods. *See Dixon*, 141 T.C. at 185. The IRS did not follow these instructions. Respondent abused his discretion in the improper application of voluntary payments.

IV.    *Conclusion*

We sustain the amounts subject to the notice of lien with the exception that (1) petitioner is not liable for the addition to tax for failure to timely file the Form 941 return for the period ending March 31, 2015, and (2) respondent abused his discretion in his application of petitioner's July 2021 payment as described herein.

To reflect the foregoing,

*An appropriate order and decision will be issued.*